[Crim. No. 7349. Third Dist. Nov. 6, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM BARNABUS ANDERSON, Defendant and Appellant.

**COUNSEL**

William J. Owen and Blackman, Owen & Blackman for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Eddie T. Keller and Peter J. McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—After a trial by jury, defendant was found guilty of selling a restricted dangerous drug, to wit, a barbiturate (Health & Saf. Code, § 11379, formerly § 11912). He appeals from the order of probation, contending:

1. Defendant was denied due process by the prosecution's failure to undertake reasonable efforts to maintain contact with and to obtain information by which the defense could locate the police operator.

2. Defense counsel's failure to undertake reasonable efforts to locate the police operator amounted to ineffectual assistance of counsel.

3. The court failed to give the jury, *sua sponte,* the cautionary instructions concerning admissions.

4. The operator's request to the police officer for change was inadmissible hearsay.

5. The evidence presented to the trier of fact was insufficient to sustain the conviction.

### FACTS

On November 6, 1972, Detective Anderson, a Sacramento police officer, and an undercover "operator" and informant, James Thomas, went to the defendant's apartment in Sacramento in an attempt to purchase some capsules or "reds" from the defendant. Prior to leaving the police station, the "operator" Thomas was subjected to a "skin search" by Detective Koupal of the Sacramento Police Department. No narcotics were found. Thomas was then given a 20-dollar bill.

Officer Anderson and Thomas drove to the apartment where defendant was staying, arriving there at about 7:12 p.m. Detective Koupal drove in another car to the apartment to act as cover for Thomas and Anderson.

Defendant and an unidentified subject were in the apartment when Officer Anderson and Thomas entered. Thomas asked defendant if he had any more reds and the defendant answered, "Yes." Defendant went into the kitchen, obtained a piece of aluminum foil, and then went into a bedroom where he was joined by Thomas. Officer Anderson and the unidentified occupant remained in the living room of the apartment.

Shortly thereafter, Thomas came out of the bedroom and asked Anderson if he had any change, to which the officer replied in the negative. Thomas then re-entered the bedroom. Approximately two minutes later,

the defendant and Thomas came back to the living room. Thomas was carrying a small package of tinfoil which he handed to Officer Anderson. Anderson and Thomas then left the residence.

Upon returning to the police station, Thomas returned $15 to Detective Koupal, and Thomas was again searched. The tinfoil contained 10 red capsules. Three of the capsules were Secobarb and seven were Pentobarb, all falling within the dangerous drugs division of the Health and Safety Code.

Defendant took the stand in his own defense and testified as follows: He stated that he was staying at the apartment of a friend, Jim Daley, on the 6th of November, 1972. On that evening he answered a knock at the door and Anderson and Thomas entered the apartment. Thomas indicated he was a friend of Daley's and wished to speak with defendant in private. They went into the bedroom and Thomas asked defendant whether Daley's parole officer had been by. Thereafter, Thomas asked to use the bathroom and did so. Later, after Anderson and Thomas had departed, defendant found in the bathroom an empty bottle of Seconal tablets that he had received by prescription and used for insomnia. He normally kept this bottle of tablets on a nightstand in the bedroom. Defendant claimed to have never seen Thomas before.

On rebuttal, Detective Koupal testified that on November 3, 1972 (three days before the sale), he observed the "operator," Thomas, enter defendant's apartment at about 6 p.m. Approximately five minutes thereafter defendant and Thomas left the apartment and walked down the street to the Stag Bar.

### 1. *Location of Police Operator.*

■ Defendant contends he was denied due process by the prosecution's failure to undertake reasonable efforts to maintain contact with and to obtain information by which the defense could locate the undercover police operator.

Defendant relies principally on *People* v. *Goliday* (1973) 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537]. The court there held that if an informant is a material witness on the issue of guilt or innocence, the prosecution must divulge the identity of the informer (operator) or suffer a dismissal. (8 Cal.3d at p. 777.) The court then went on to state: "Although originally this duty to disclose the identity of a material witness required only that the prosecution reveal information actually in its possession, in *Eleazer* v. *Superior Court, supra,* 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], we extended the prosecution's obligation and required, in addition, reasonable

steps to *locate or obtain* information about such informants. If 'through police tactics or happenstance [an] informer becomes a material witness, the police should make such inquiries and arrangements as are reasonably necessary to enable the prosecution and defense to locate him.' (1 Cal.3d at p. 852.) We recognized the futility of a rule requiring disclosure of the information which the police know about a material witness informer without a further requirement that the police make efforts to obtain information useful in locating the informer as well. We noted, however, that '[d]ue process requires only that the police and the district attorney undertake *reasonable efforts* in good faith to *locate* the informer so that either party or the court itself (see Evid. Code, § 775) could, if it so desired, subpena him as a witness.' (Italics in the original.) (1 Cal.3d at p. 853.)" (8 Cal.3d at p. 778.)

The court in *Eleazer* also made the following comment: "The 'reasonable effort' required will, of course, depend on the facts of each case. If the informer has a regular abode and place of employment, simply obtaining his address and telephone number may suffice; if he is transient, or conceals his address, the law enforcement agency probably should make some arrangement for maintaining close communication with him." (1 Cal.3d at p. 853, fn. 10.)

In general the defendant contends the prosecution did little, if anything, to maintain contact with the operator even though the prosecution knew Thomas was a material witness who served as an "active agent of the police." (*People* v. *Goliday, supra,* 8 Cal.3d at p. 781.)

The chronology of events is as follows: On the morning of the first day of trial, prior to the swearing in of the jury panel, defense counsel moved that the action be dismissed unless the prosecution produce a confidential informant (Thomas) and also on the ground that the district attorney's office did not make a good faith attempt to locate this informant. An evidentiary hearing was held; both counsel argued the motion and two witnesses were called by the prosecution.

Approximately two weeks prior to trial, defense counsel requested the prosecution to furnish him with the CRC[1] number of the informant which was furnished to him.

At this juncture, it should be noted that the trial was originally set for July 19, 1973. The trial was continued, on defendant's motion, until October 9, 1973. Apparently, however, defense counsel during this interval of time made no effort to locate the witness either through the prosecution's

---

[1]California Rehabilitation Center at Chino.

office or through his own efforts. In this connection it is interesting to note that a different deputy public defender did subpena Thomas out of CRC in August of 1973 for the purpose of another trial.

The evidence produced at the hearing indicated that neither the prosecution nor the defense knew of the operator's whereabouts, although apparently Thomas had been in CRC until shortly before the hearing in question.

The evidence also showed that the defense contacted Detective Anderson of the Sacramento police. Anderson advised defense counsel that Thomas was no longer in CRC but was believed to be in the Sacramento community. An attempt was made by the police to locate Thomas through his parents' address somewhere in northeast Sacramento but to no avail. Detective Anderson looked through all the police records in a vain attempt to locate the address of either Thomas or his father. He also checked with Detective Koupal.

There is little doubt that the evidence produced at trial established that the witness was material to the issue of guilt, since the witness (Thomas) was personally involved in the sale of the barbiturate. Thus, *Goliday* and *Eleazer* are applicable *if* the prosecution did not make a good faith effort to locate the witness, Thomas.

Under all of the circumstances of this case, we think the prosecution met the "reasonable effort" requirement. (See *Eleazer* v. *Superior Court, supra*, 1 Cal.3d at p. 853.) Here, the defense asked for and was granted two lengthy continuances. The prosecution knew of the witnesses' location until a short time prior to the final date set for trial. Furthermore, the defense had not advised the prosecution of its desire to subpena Thomas as a witness until just a few weeks before the final trial date. The police thereafter made good faith efforts to locate Thomas by searching their files. Under this set of facts, we conclude that the trial court properly denied the defendant's pretrial motion to dismiss.

### 2. *Inadequate Assistance of Counsel.*

In the alternative, the defendant argues that if the prosecution had no duty to produce the police operator or to fulfill its good faith requirement to ascertain the whereabouts of the operator, then defense counsel failed to prepare adequately for trial.

If trial counsel's lack of diligence or competence results in withdrawing a crucial defense from the case, reducing the trial to a farce or a sham, the defendant has not had the effective assistance of counsel to which he is entitled under the Sixth Amendment. (*People* v. *Najera* (1972)

8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353].) The defendant, however, must affirmatively show that the omissions of trial counsel involved a critical issue, and that such omissions cannot be explained on the basis of knowledgeable choice of tactics. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].)

■ Competency of counsel has generally been divided by the courts into two areas: Competence in the sense of strategy tactics and judgment exercised by the counsel during his conduct and control of the case; or competence or lack of it when the attack is made because of a lack of knowledge of the law or lack of preparation and investigation exhibited by counsel. (*People* v. *Pineda* (1967) 253 Cal.App.2d 443, 468-469 [62 Cal.Rptr. 144], and citations contained therein.)

As to this latter category, defense counsel showed no lack of knowledge of the law when he moved (with appropriate citation of authorities) that the prosecution either produce the witness or that the action be dismissed. Defense counsel also followed the available leads to ascertain the present location of the witness. Thus, counsel did not demonstrate any incompetency based upon knowledge of the law or inquire into the circumstances of the crime. (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 458-459 [99 Cal.Rptr. 313, 492 P.2d 1].)

Defendant, by implication, also argues that defense counsel was incompetent in not seeking yet another continuance in an effort to locate Thomas. In our view, however, we consider this to be a trial tactic since counsel apparently felt a valid defense could be presented without Thomas' presence. (See *People* v. *Beagle, supra,* 6 Cal.3d 441; *People* v. *Hill* (1969) 70 Cal.2d 678, 689-690 [76 Cal.Rptr. 225, 452 P.2d 329].)

We emphasize that the trial here was in no way reduced to a "farce or a sham." (See *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487].) We therefore reject this contention.

3. *Instructions.*

■ The defendant contends the court failed to give the jury, *sua sponte,* the cautionary instruction concerning admissions.

Trial testimony indicated that after arriving at the apartment, Thomas asked defendant if he had any more "reds," and the defendant answered, "Yes." Defense counsel objected on the basis of hearsay but the objection was overruled.

Defendant now contends that the court should have given cautionary

instructions to the effect that oral admissions of defendant ought to be viewed with caution. (See CALJIC No. 2.71; see also CALJIC Nos. 2.80 and 2.72.) There is little doubt that the statement was an admission. (See *People* v. *Davis* (1954) 43 Cal.2d 661, 670 [276 P.2d 801].)

The decisional law is to the effect that the trial court is under a duty to instruct, *sua sponte*, on admissions (i.e., the cautionary instruction). (*People* v. *Beagle, supra,* 6 Cal.3d at p. 455; see also *People* v. *Henry* (1972) 22 Cal.App.3d 951, 957-958 [99 Cal.Rptr. 723].)

The People, however, contend the facts here require a contrary decision. They contend that since defendant admitted *at trial* that he possessed Seconal tablets at the time Thomas was at the apartment, the fact of defendant's possession of Seconal was not in the case. They conclude: "Since instructions are only to be given in response to the issues raised in the case, there was no purpose to be served by instructing the jury on out-of-court admissions and the manner in which they were to be treated." (See *People* v. *Salcido* (1966) 246 Cal.App.2d 450, 456 [54 Cal.Rptr. 820].)

The argument is an appealing one and appears to have merit. In any event, however, the error, if any, was harmless. Defendant admitted possession of the barbiturate at trial. The other evidence presented at trial provided substantial support for the sale itself. It does not appear to us reasonably probable that a result more favorable to defendant would have been reached even assuming error occurred. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### 4. *Hearsay Evidence.*

■ At trial the police officer Anderson testified the operator exited the bedroom alone and asked the officer if he "had any change" to which the officer replied, "No." Earlier at trial, defense counsel had objected to the introduction of any conversation with the operator on the basis of hearsay. The court ruled that statements *made in the presence of defendant* were admissible.

Defendant now contends the operator's request for change was not made in the presence of the defendant and therefore did not constitute an admission. He further contends the statement was hearsay since it was being made other than by a witness while testifying at the hearing and was being offered to prove the truth of the matter stated. (Evid. Code, § 1200.) He contends the statement and response were highly prejudicial since it indicated some sort of transaction was going on in the bedroom. Finally, defendant contends he was never afforded the opportunity to cross-examine Thomas.

Apparently defendant takes the position on this appeal that he had a continuing objection. Nevertheless, this was a different situation and therefore he should have renewed his objection and allowed the trial court to rule. In the absence of objection, the issue of hearsay may not be raised for the first time on appeal. (*People* v. *Brown* (1969) 272 Cal.App.2d 623, 629 [77 Cal.Rptr. 650].)

However, even assuming there was error, it was not prejudicial. The evidence had very little intrinsic probative value. The other evidence convincingly established that a sale had occurred. Finally, although defendant was not afforded the opportunity to cross-examine the maker of the statement, he was afforded the opportunity to cross-examine Officer Anderson, to whom the statement was directed. The error, if any, was harmless. (*People* v. *Watson, supra,* 46 Cal.2d 818.)

5. *Sufficiency of the Evidence.*

Defendant contends the evidence was insufficient to support the verdict.

The role of the appellate court in applying the substantial evidence test is well established. It is to determine whether there is substantial evidence to support the conclusions of the trier of fact and not whether guilt is established beyond a reasonable doubt. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) To this end, the appellate court must view the evidence in the light most favorable to respondent and before the judgment can be reversed, it must clearly appear that upon no reasonable hypothesis whatever is there substantial evidence to support it.

Without reciting the evidence again, we are convinced that the evidence amply supports the jury verdict of a sale of a barbiturate.

The judgment is affirmed.

Richardson, P. J., and Paras, J., concurred.

A petition for a rehearing was denied November 21, 1974, and appellant's petition for a hearing by the Supreme Court was denied January 2, 1975. Richardson, J., did not participate therein.