[No. F040610. Fifth Dist. July 11, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
PARRISH BRYANT GARVIN, Defendant and Appellant.

COUNSEL

John Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Jeffrey D. Firestone and Kathleen A. McKenna, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BUCKLEY, J.—**

## INTRODUCTION

Defendant Parrish Bryant Garvin was involved in an altercation with two deputies while he was incarcerated. He claimed that he had acted in self-defense. A jury found him not guilty of attempted murder but guilty of the lesser included offense of attempted voluntary manslaughter and found true a great bodily injury enhancement allegation. He was sentenced to six years eight months' imprisonment.

Defendant argues that the trial court had a sua sponte duty to instruct on the effect of the victim's antecedent assaults against defendant on the reasonableness of defendant's conduct. We have determined that while the accused is entitled to instruction on this point in the proper case, a timely request must be interposed below. Furthermore, defendant has not shown that his trial counsel's failure to request this instruction rendered counsel's assistance ineffective. Accordingly, we will affirm.

## FACTS

On December 20, 2001, defendant and five other inmates were escorted inside the visitation room of the Kings County main jail by Sergeant Arnett and Deputy Leonardi. The deputies remained outside the room. Instead of sitting down and beginning his visit, defendant remained standing and began to pace back and forth in the room. Sergeant Arnett opened the door and told defendant to sit down and begin his visit. Defendant walked to the door and cursed at the sergeant. The sergeant repeated his command; defendant continued his abuse. Sergeant Arnett told defendant that his visit was

terminated and to exit the room. Defendant became more agitated and challenged the sergeant to come in and get him. Sergeant Arnett entered the room with Deputy Leonardi behind him. Defendant backed into a corner and took a combative position. As Sergeant Arnett attempted to grab defendant by his left arm, defendant yanked his arm away, struck the officer on the right jaw and put the sergeant in a chokehold. The sergeant could not breathe and thought he was going to die. Deputy Leonardi grabbed defendant by the hair. All three men fell to the floor. Defendant continued to maintain his chokehold on the sergeant. He yelled, "I got you, motherfucker, you're going to die." Defendant finally released the sergeant after Deputy Leonardi struck him three times in the face and Sergeant Arnett grabbed and squeezed his testicles. Defendant was restrained with the help of additional deputies. While being escorted back to his cell, he attempted to kick a deputy and to head-butt Sergeant Arnett.

Two days later, Sergeant Angela Hunter served a disciplinary action report on defendant for an unrelated matter. He became angry and said, "I choked the shit out of a deputy. I tried to kill him and break his fucking neck. The D.A. ain't done fucking shit about it because you see I'm still here with no other charges, and I tried to kill that motherfucker. So you see I don't care shit about no fucking write-up."

Defendant testified that Sergeant Arnett attacked him. He said that the sergeant grabbed his arm. Defendant pulled away and faced him. The sergeant punched him in the chest and defendant pushed him away. The sergeant was going to tackle him so defendant put him in a chokehold. Deputy Leonardi grabbed defendant's hair and punched him. Defendant was dazed and lost his grip on Sergeant Arnett when they hit the ground. Sergeant Arnett kept hold of defendant's testicles even after defendant let go of his neck. Defendant does not remember if he said anything to the sergeant. Sergeant Arnett later tried to bang defendant's head against a wall in an unprovoked attack in the hallway. At no point did he intend to kill Sergeant Arnett. He was trying to protect himself from Sergeant Arnett's aggression. He did not tell Sergeant Hunter that he had choked a deputy and tried to kill him.

During cross-examination, defendant testified that he always tells deputies to get away from his cell door. The prosecutor attempted to find out why, querying whether this was because he did not like deputies. Defendant replied, "No, it's not because I don't like them[;] it's because the way they do me." Upon further questioning, defendant testified that he had been beaten for no reason on four or five prior occasions by an unspecified number of deputies. Apparently, Sergeant Arnett was one of his tormentors. He had

written the district attorney's office about the beatings four or five times. This is why he was laughing when he was choking Sergeant Arnett. It relieved "all my stress. Many times as they beat me up before, your department knew about it." Now, "I finally got him back for jumping on me all those times." Defendant "felt good about [this]." He said, "I love it, I love it" at the end of the altercation, "[b]ecause they all got caught. They finally got caught beating me, they had to take me to the hospital. Just like they did the other times."

Defense counsel did not question defendant about the prior beatings during redirect examination. This topic was not referenced by defense counsel or the prosecutor during closing arguments. The jury was instructed on self-defense with CALJIC Nos. 5.12, 5.17, 5.30, 5.51, 5.52, 5.53, 5.54 and 5.55. Defense counsel did not request any other instructions relating to self-defense.

## DISCUSSION

It is undisputed that there is a line of authority holding that it is erroneous to refuse a request for instruction on the effect of the victim's antecedent threats or assaults against the defendant on the reasonableness of defendant's conduct. (*People v. Moore* (1954) 43 Cal.2d 517, 531 [275 P.2d 485]; *People v. Torres* (1949) 94 Cal.App.2d 146, 151–153 [210 P.2d 324]; *People v. Bush* (1978) 84 Cal.App.3d 294, 302–304 [148 Cal.Rptr. 430]; *People v. Pena* (1984) 151 Cal.App.3d 462, 474–478 [198 Cal.Rptr. 819]; *People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1663–1664 [11 Cal.Rptr.2d 267].) The question we must resolve is whether the trial court is obligated to give such an instruction sua sponte.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*People v. Middleton* (1997) 52 Cal.App.4th 19, 30 [60 Cal.Rptr.2d 366].) The court has a sua sponte duty to instruct on defenses when " 'it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*Ibid.*) Yet this duty is limited: "the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. [Citation.] Thus, the court is required to instruct sua sponte only on general principles which are necessary for the jury's understanding of the case. It

need not instruct on specific points or special theories which might be applicable to a particular case, absent a request for such an instruction." (*People v. Owen* (1991) 226 Cal.App.3d 996, 1004–1005 [277 Cal.Rptr. 341]; *People v. Henry* (1972) 22 Cal.App.3d 951, 957 [99 Cal.Rptr. 723].) Alternatively expressed, "[i]f an instruction relates 'particular facts to the elements of the offense charged,' it is a pinpoint instruction and the court does not have a sua sponte duty to instruct." (*People v. Middleton, supra,* 52 Cal.App.4th at p. 30.) For example, our Supreme Court has recently held there is no sua sponte obligation to instruct on after-formed intent. (*People v. Jones* (2003) 29 Cal.4th 1229, 1258–1259 [131 Cal.Rptr.2d 468, 64 P.3d 762].)

Defendant offers no reasons supporting imposition of a sua sponte instructional duty other than that the rule concerning antecedent threats is not a recent, "abstruse, underdeveloped theory of law" and that such an instruction is supported by the evidence. We are not convinced. ■ The trial court was obligated to instruct on the basic principles of self-defense. It satisfied this duty by giving the standard CALJIC instructions on this topic. These instructions are legally correct and the concept of antecedent assaults is fully consistent with the general principles that are expressed therein. (*People v. Gonzales, supra,* 8 Cal.App.4th at p. 1665.) ■ The issue of the effect of antecedent assaults against defendant on the reasonableness of defendant's timing and degree of force highlights a particular aspect of this defense and relates it to a particular piece of evidence. An instruction on the topic of antecedent assaults is analogous to a clarifying instruction. It is axiomatic that "[a] defendant who believes that an instruction requires clarification must request it." (*People v. Coddington* (2000) 23 Cal.4th 529, 584 [97 Cal.Rptr.2d 528, 2 P.3d 1081].) Therefore, we conclude that this is a specific point and is not a general principle of law; the trial court was not obligated to instruct on this issue absent request.

We also reject defendant's contention that his attorney's failure to request instruction on this topic rendered his assistance ineffective. As will be explained below, his attorney's failure to develop this point and to request instruction was an objectively reasonable tactical decision.

" ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citations.] "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not

deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.] [¶] In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]' [Citation.]" (*People v. Jones, supra,* 29 Cal.4th at p. 1254.)

Defendant limits his ineffective assistance complaint to counsel's failure to request an instruction on the effect of the antecedent assaults on defendant. Even cursory review of the record reveals an obvious tactical reason for the omission: she was not relying on the prior beatings as part of the theory of the defense. Defense counsel did not question defendant about the prior beatings during her redirect examination. She did not reference this topic during closing argument. Instead, she argued that defendant reasonably defended himself against Sergeant Arnett's aggression. Moreover, she managed this task without unduly disparaging the sergeant and his partner.

We believe that defense counsel's avoidance of this topic and her failure to request instruction on the antecedent assaults was an objectively reasonable tactical decision. If she had elected to pursue this issue, it would have forced her to vilify not only the actual victim, but also the staff at the jail and the district attorney's office. Obviously, this would have been a dangerous tactical move. It could have destroyed defendant's credibility and could have turned the jury against him if counsel did not provide evidence substantiating his uncorroborated testimony that he had been repeatedly beaten for no apparent reason and that the district attorney's office had ignored his numerous letters of complaint. Furthermore, even if defense counsel had proved that the beatings occurred as alleged by defendant, a wily prosecutor could have used the beatings against defendant because they provided defendant with a strong motive to attempt to murder Sergeant Arnett—revenge. Defendant finally had obtained vengeance for the prior unjustified beatings. This could have decimated defense counsel's closing argument that defendant did not have the intent to kill and that, at the very most, he was guilty of assault. It must be remembered that the jury did not find defendant guilty of attempted murder, which requires proof of intent to kill. Since there appears to be a reasonable explanation for the challenged omission, defendant's claim fails.

## DISPOSITION

The judgment is affirmed.

Dibiaso, Acting P. J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 17, 2003. Kennard, J., did not participate therein.