Filed 7/7/15  P. v. Hanley CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID BARRY HANLEY,<br><br>    Defendant and Appellant. | D068050<br><br><br>(Super. Ct. No. SWF1201191) |

APPEAL from a judgment of the Superior Court of Riverside County, Timothy F. Freer, Judge.  Affirmed in part, vacated in part and remanded.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald R. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted David Barry Hanley for the attempted murder of a peace officer engaged in his duties (Pen. Code,[1] §§ 664, subd. (e); 187, subd. (a)), and four counts of delaying or obstructing an executive officer by means of threats or violence (§ 69). The court sentenced him to prison for seven years to life for the attempted murder, with a 20-year enhancement for the personal discharge of a firearm. The court stayed sentences on the remaining counts and allegations.

On appeal, Hanley claims the court erred by not instructing the jury on the definition of "lawful duty" and by imposing $10,000 in victim restitution. We conclude the jury instructions were correct, but as we explain, we determine the court erred in imposing $10,000 in victim restitution.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of Hanley's arrest, sheriff's deputies were responding to multiple reports of gunshots in a neighborhood. While Deputy Moore was investigating a bullet that went through a woman's bedroom, he heard more gunshots and began investigating their source. The woman reported the gunshots seemed to be coming from a passing car. Moore stopped a car in the area, but he continued to hear the gunshots while talking to the car's occupants. Deputies Sanches, Rodriguez-Melendez (Rodriguez), and Yarbrough joined Moore to help locate the source of gunshots. The deputies noted that some shots sounded like they came from a handgun and others sounded like they came from a

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

shotgun. All deputies believed the shots were coming from an area near a eucalyptus grove.

The deputies used their car lights to illuminate the house closest to the grove, announced their presence, and demanded the occupants come out of the home with their hands up. The deputies determined that the man and woman who came out were not involved in the shooting. The couple gave the deputies permission to go behind their house where there was another house, several vehicles, and two motor homes. At first, the man told the deputies that no one was occupying the motor homes, but later said his uncle was staying in the smaller one.

Moore, Sanches and Yarbrough went to investigate behind the house while Rodriguez stayed with the couple. The man then told Rodriguez that two people lived in the motor homes and he was unsure if they had any firearms. Moore and Yarbrough noticed a box of shotgun shells on the bumper of the larger motor home. Upon hearing thumping, shuffling and crawling noises inside the larger motor home, Moore, Sanches and Yarbrough began yelling that they were from the sheriff's department and for anyone inside to come out. The deputies banged on the side of the motor home with their fists and flashlights but received no response.

Yarbrough and Moore opened the unlocked door of the larger motor home and shined their flashlights while continuing to announce their presence, believing that a victim or shooter may be inside. Once the door was open, Sanches continued to announce the deputies' presence. Yarbrough saw a rifle inside the motor home and Moore pulled it out. There was no response from inside the motor home.

3

At first, Moore did not see anyone when he looked inside the motor home; however, as he was backing out, he made eye contact with Hanley. Moore said that he was from the sheriff's department and told Hanley to come out with his hands visible. Hanley ducked out of sight.

Upon losing sight of Hanley, Moore, Yarbrough and Sanches went behind a nearby pickup truck and continued to announce themselves and ask Hanley to come out. Rodriguez joined the other deputies. Hanley came to the door of the motor home holding a shotgun in the "low ready" position. The deputies told Hanley to drop the gun and he said, "Why?" He then moved to one side of the motor home door and raised the gun toward the deputies. The deputies opened fire and Hanley fired back.

Seconds later, Hanley yelled "you shot me, look at what you did to me." The deputies told Hanley to drop the gun and come out with his hands visible. Hanley then said, "I can't. "You killed me" and asked, "why are you shooting at me?" Hanley came to the door of the motor home. His hands were not raised and he was bleeding from his right arm and hand. As he was exiting the motor home, Hanley fell to the ground and a handgun and shotgun shells fell out of his pocket and landed next to him. Moore handcuffed Hanley.

DISCUSSION

I

The trial court instructed the jury with the CALCRIM instructions on the attempted murder of a peace officer lawfully performing his or her duties (CALCRIM No. 602) and the use of violence or threat of violence to try to prevent an officer from

4

performing his or her lawful duty (CALCRIM No. 2651). Hanley did not request any additional or "pinpoint" instructions. However, on appeal, Hanley contends the trial court committed reversible error by failing to instruct the jury on CALCRIM No. 2670 defining "lawful duty." He alleges the court should have instructed the jury, sua sponte, with that definition. We disagree.

Claims of instructional error are subject to an "independent" or "de novo standard of review." (*People v. Manriquez* (2005) 37 Cal.4th 578, 581, 584; *People v. Alvarez* (1996) 14 Cal.4th 155, 217.) The test to determine the adequacy of instructions is whether the trial court " 'fully and fairly instructed on the applicable law.' " (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' " (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.) "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

In criminal cases, the trial court must instruct the jury, sua sponte, on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the cases are those principles closely and openly connected with the facts before the court which are necessary for the jury's understanding of the case. (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) Specifically, the trial court has a duty to instruct sua sponte, on a defense if it appears that the defendant is relying on such a defense, or if

5

there is substantial evidence supportive of such a defense that is not inconsistent with the defendant's theory of the case. (*People v. Barton* (1995) 12 Cal.4th 186, 195.) Here, the trial court could not have discerned that Hanley was relying on the theory of unlawful police action as a defense from the evidence he presented. From the record, Hanley's defense strategy was that he was surprised, did not realize he was dealing with deputies and that he did not shoot at them. Hanley did not present evidence at trial sufficient to deserve consideration by the jury that the deputies were acting unlawfully.

Although the trial court must instruct the jury, sua sponte, on general principles of law, there is no duty to give "pinpoint" instructions sua sponte that "relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Such "pinpoint" instructions need be given only upon request if there is evidence to support them. (*Ibid.*) Because the definition of lawful duty is a "specific point" and "not a general principle of law," the trial court was not obligated to instruct on this, absent a request from Hanley's counsel. (*People v. Garvin* (2003) 110 Cal.App.4th 484, 489.) At trial, Hanley's counsel did not request that CALCRIM No. 2670 be included.

Having told the jury that it must find beyond a reasonable doubt that a deputy was acting lawfully, a court does not need to define "lawful duty" without substantial evidence that the deputy was acting unlawfully. (See *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1219.) We find that the trial court had no duty to give an instruction defining "lawful duty" because Hanley's counsel failed to present substantial evidence that the deputies were acting unlawfully.

6

We conclude that the jury instructions were correct, and that the trial court had no sua sponte duty to instruct under CALCRIM No. 2670. Therefore, we do not engage in a discussion of Hanley's ineffective assistance of counsel claim as it relates to this issue.[2]

II

We review a trial court's restitution order for abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498; *People v. Giordano* (2007) 42 Cal.4th 644, 665; *People v. Millard* (2009) 175 Cal.App.4th 7, 26.) Hanley contends the court erred by imposing $10,000 in victim restitution because there was no evidence that any victims suffered any economic losses. We agree.

The trial court has broad discretion to calculate the amount of restitution ordered. (*People v. Giordano, supra*, 42 Cal.4th at pp. 663-664.) A restitution order not supported by substantial evidence constitutes abuse of the trial court's discretion and must be reversed. (*People v. Harvest* (2000) 84 Cal.App.4th 641, 653.) Abuse is established when the trial court's restitution order is arbitrary or capricious (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382), or when it is based solely on "the trial court's subjective belief regarding the appropriate compensation," with no "factual and rational basis for the

---

[2]     " ' " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' " ' " (*People v. Garvin, supra*, 110 Cal.App.4th at p. 490.) Here, defense counsel's tactical decision was to use the theory that Hanley was alarmed and acted reasonably given the situation, not that the police were acting unlawfully. Nothing in the record indicates that Hanley's defense theory was anything but an objectively reasonable tactical decision.

amount ordered." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1125; *People v. Mearns, supra*, 97 Cal.App.4th at p. 499.)

The record in this case presents no evidence of any victim's economic losses, yet the court ordered $10,000 in victim restitution. The probation department sent letters to the deputies asking whether they were requesting restitution. None of the deputies responded or requested restitution. Further, neither the prosecutor nor Sanches, who was present during the sentencing hearing, requested any restitution. The probation department recommended $10,000 in victim restitution, but did not include any evidence to support that amount. Nonetheless, at Hanley's sentencing hearing, the trial court ordered $10,000 in victim restitution.

The People contend the order was justified by economic losses to the owners of the motor home, the truck that police hid behind, and the neighbor who had a bullet enter her wall. However, that claim is unsupported by any evidence in the record documenting those losses. Therefore, the order of $10,000 constitutes an abuse of the court's discretion because there was no factual or rational basis for that order.

Although Hanley's counsel did not object to the restitution order at trial, due to the clarity of the issue, we elect not to apply forfeiture. We conclude that the trial court erred in ordering $10,000 victim restitution and we vacate that order.[3]

---

[3] In light of addressing the victim restitution issue on its merits, we do not address Hanley's ineffective assistance of counsel claim as to this issue as well.

DISPOSITION

We vacate the $10,000 victim restitution order, and remand that matter to the superior court for further proceedings consistent with this opinion. In all other aspects, the judgment is affirmed.

_____
HUFFMAN, Acting P. J.

WE CONCUR:

_____
NARES, J.

_____
HALLER, J.

9