Filed 11/26/13  P. v. Green CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>WILLIAM RAY GREEN III,<br><br>        Defendant and Appellant. | F064805<br><br>(Super. Ct. No. F11901431)<br><br>**ORDER<br>MODIFYING OPINION<br>AND DENYING PETITION<br>FOR REHEARING<br>[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on November 7, 2013, be modified in the following particulars:

1.  Following the sentence under the disposition heading on page 12, add as footnote 9 the following footnote:

[9]        On November 14, 2013, defendant filed a petition for rehearing requesting to add to his original briefing the testimony of Maria Ortiz that Ann told her about the birthday cake incident and that defendant "had touched her inappropriately when he massaged her feet."  We have considered these facts and doing so does not change our holding.

There is no change in judgment.  Defendant's petition for rehearing is denied.

_____
DETJEN, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
POOCHIGIAN, J.

Filed 11/7/13  P. v. Green CA5 (unmodified version)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>WILLIAM RAY GREEN III,<br><br>    Defendant and Appellant. | F064805<br><br>(Super. Ct. No. F11901431)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  James M. Petrucelli, Judge.

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On March 21, 2012, a jury convicted defendant and appellant William Ray Green III of six counts of committing a lewd act upon Desiree S.,[1] a child under the age of 14 years (Pen. Code, § 288, subd. (a); counts 1-6), and three counts of molesting Ann A., a child under the age of 18 years (Pen. Code, § 647.6, subd. (a); counts 7-9). On appeal, defendant argues that the trial court erroneously admitted extrajudicial statements under the fresh complaint doctrine or, if properly admitted, failed to give adequate limiting instructions. He also claims ineffective assistance of counsel. We affirm.

## STATEMENT OF FACTS

I. Prosecution Evidence

    a. *Desiree S.*

In January 2010, Desiree, then 13 years old, and her younger brother were placed as foster children in defendant's home. At that time, defendant also lived with his wife, two biological children, and two other foster children. During Desiree's stay, three more foster children, including Ann, were placed under defendant's care.

In March 2010, defendant entered Desiree's bedroom and offered to massage her legs. After she accepted his offer, he initially massaged her feet, calves, and thighs and then inserted his fingers into her vagina. When defendant asked Desiree if she felt uncomfortable, she did not answer. A couple of days later, Desiree was walking toward the stairs when defendant grabbed her and led her to the couch. He positioned himself behind her body, removed their clothes, and inserted his penis into her anus. Defendant told Desiree that she was no longer a virgin and ejaculated into a towel. Following this incident, Desiree began to cut herself because she believed that she was at fault. She did

---

[1] We refer to certain persons by their abbreviated names in accordance with our Supreme Court's policy regarding protective nondisclosure of identity. No disrespect is intended.

2.

not report what happened because "no one would believe [her]" and she feared that she would be separated from her brother.

Desiree specified four other incidents. First, Desiree was lying in her bed when defendant entered her room, mounted her, removed their shorts, and rubbed his penis against her vagina. He told her that he would not insert his penis "all the way in" and then inserted his penis into her vagina.[2] Second, Desiree and defendant were conversing in Desiree's bedroom when he kissed her, removed her shorts, positioned her on her back, lifted her legs, and put his mouth on her vagina.[3] Third, Desiree was cutting herself in the bathroom when she heard someone ascending the stairs. After she quickly washed off the blood, defendant entered the bathroom, kissed her, pulled down her shirt and bra, and put his mouth on her breasts. Finally, in or around June 2010, defendant called Desiree into his bedroom, kissed her, pulled down her shorts, positioned himself behind her body, and inserted his penis into her anus.

In July 2010, Desiree and the other children were removed from defendant's home after Ann reported a separate incident to a social worker. (At p. 5, *post*.) Starting in September 2010, Desiree lived with her aunt, Nora S. One time, after Desiree started living with Nora, defendant picked her up and took her to his father's house. In one of the rooms, he "tried to get on top of [her.]" When Desiree told defendant to stop, he asked her if she had a boyfriend. She answered, "No." Defendant then returned to Nora's house. He subsequently sent Desiree text messages containing Bible verses about forgiveness.

---

**2** Desiree testified that she and defendant engaged in vaginal intercourse approximately 15 times.

**3** Desiree testified that defendant put his mouth on her vagina on two or three occasions.

3.

In March 2011, Emily I., Desiree's best friend, observed cut marks on Desiree's left forearm and asked her about them. In a text message, Desiree revealed that she "had been in foster care" and "was raped by [her] foster dad." Emily urged her to notify the police or an adult. On the same day, Desiree told Nora that defendant raped her. Nora subsequently called the police.

Under the direction of Detective Jose Jauregui, a member of the Fresno Police Department's Sexual Assault Unit, Desiree made a recorded pretext call to defendant. At the beginning of the conversation, Desiree spoke to defendant about the "first time [he] touched [her]." He commented that he "screwed up," "it should have never went there," and he loved her. Defendant asked Desiree if he forced himself on her. She answered, "Yes." Next, Desiree asked defendant to explain why he inserted his fingers into her vagina. He stated that "people find [her] very attractive." Defendant then questioned whether Nora was aware of what happened. Desiree replied that she "was thinking about telling [Nora]" and pointed out that she "started cutting [her]self" because she did not have anyone in whom to confide. Defendant implored her not to report him because he would "lose everything." Desiree accused him of "trying to satisfy [him]self" when he "put[] it in [her] through the front and through [the] back …." Defendant apologized, pled for forgiveness, and acknowledged that he "hurt [her]" and "betrayed [her] trust." Lastly, Desiree told defendant that she thought he impregnated her "[t]he last time … right before [she] left." He remarked that he "prayed that God … would stop it."

b. *Ann A.*

In June 2010, Ann, then 16 years old, and her two younger sisters were placed as foster children in defendant's home. At that time, defendant was no longer living with his wife and his biological children. On one occasion, as Ann was leaving the house to walk around the neighborhood, defendant stopped her by the front door, stood behind her, put his arms around her waistline, and touched her buttocks. She felt his penis against her body and "didn't feel comfortable [with] the way he was holding [her]."

4.

In July 2010, Ann and Desiree were baking a cake for defendant's birthday when defendant put frosting on their and the other children's faces. He then chased Ann into the living room where he pinned her down on the couch, mounted her, and "rubbed the icing he had on his face onto [hers]." Their lips touched in the process. Ann felt uncomfortable, turned her head to avoid defendant's face, and struggled to get up. A few days later, defendant apologized to her for "making [her] feel uncomfortable." Thereafter, during defendant's birthday dinner at a buffet restaurant, defendant tickled Ann's inner thigh while they were sitting next to each other at the table. She told him to stop and pushed his hand away twice before he finally ceased.

At some point, defendant temporarily confiscated Ann's cell phone because she "was on it too late at night." She was upset that her phone was taken away, but denied that she fabricated events as retribution. After Ann reported the frosting incident to her social worker, she and the other children were removed from defendant's home.

II.     Defense Evidence

Paul Binion and Aaron Pharr, defendant's pastor and best friend, respectively, testified that defendant was an honest person. Neither witnessed him engaging in inappropriate activity with another person. Romy Chachere and Miguel Nieves, both of whom coached basketball alongside defendant, also testified that he was an honest person.

Veronica Green testified that she and defendant married in 2005 and became foster parents in 2007. While Desiree was living with them, a baby monitor was placed in the room where Desiree slept. Green did not hear any inappropriate sounds or conversations between defendant and Desiree over the receiver. Green moved out of the house on June 5, 2010, due to marital problems, but returned periodically and she did not observe "anything unusual occurring between [defendant] and anyone in the house." At no point did she witness him engaging in improper behavior with another person. Green also said

5.

that Desiree "preferred to be around [defendant]" and never complained about any sexual misconduct.

## DISCUSSION

Before trial, the prosecutor moved in limine to admit, under the fresh complaint doctrine, (1) a text message from Desiree to Emily and (2) a statement made by Ann to Desiree,[4] both of which alleged sexual misconduct by defendant. The prosecutor contended that these statements would be offered "not for the purpose of the truth of the matter, but for the nonhearsay purpose[] of establishing the circumstances under which they reported the abuse." Over defense counsel's objection, the trial court granted the motion.

At trial, Emily testified that Desiree sent her a text message stating "[Desiree] was going from foster home to foster home, and [in one] of those [homes] her foster dad raped her." The prosecutor stated the text message was "not offered for the truth." The court admitted the statement over the objection of defense counsel, who did not request a limiting instruction.

Nora testified that, sometime in March 2011, she was asked by Desiree, via text message, to come into her bedroom. Nora went to Desiree's bedroom where Desiree disclosed that she was raped by defendant several times. The prosecutor maintained that Desiree's statement was "not offered for the truth." The court admitted the statement over defense counsel's objection and, upon request, gave the following limiting instruction to the jury:

> "[L]adies and gentlemen, there are rules of evidence, as you know, and there are times when hearsay evidence can come in, as long as it's not offered for the proof of the matter asserted. So this is a limited use of what she may say, you understand."

---

**4** Neither party provided citations to the record confirming that Desiree testified about this statement.

The issues before us are (1) whether Desiree's extrajudicial statements were properly admitted under the fresh complaint doctrine,[5] (2) whether defendant forfeited his argument on appeal that the trial court's limiting instruction for Desiree's statement to Nora was erroneous and prejudicial, and (3) whether defense counsel rendered ineffective assistance when he did not request an instruction for Desiree's statement to Emily and did not object to the instruction given for Desiree's statement to Nora. We now address each issue.

I.      Desiree's extrajudicial statements were admissible under the fresh complaint doctrine because they were offered for a limited, nonhearsay purpose.

Hearsay evidence is evidence of any statement made by a declarant, on an occasion other than as a witness testifying at a hearing, that is offered to prove the truth of the fact asserted and, except as provided by law, is inadmissible. (Evid. Code, § 1200, subds. (a) & (b); see also Evid. Code, § 225 [a "'[s]tatement'" includes an oral or written verbal expression].) Conversely, a declarant's extrajudicial statement that is offered for some purpose other than to prove the truth of the fact asserted is not hearsay. (*People v. Jurado* (2006) 38 Cal.4th 72, 117; *People v. Bolden* (1996) 44 Cal.App.4th 707, 714.)

The Supreme Court has held that "under principles generally applicable to the determination of evidentiary relevance and admissibility, proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the

---

**5**      Although defendant also contends the trial court erroneously admitted an extrajudicial statement made by Ann to Desiree, he did not cite evidence in the record supporting this assertion. (*Ante*, fn. 4.) Appellate briefs must support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(C); accord *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 741.) Because defendant failed to support his argument with the necessary citations to the record, he forfeited the argument. (See *Sky River LLC v. County of Kern*, *supra*, at pp. 740-741.)

fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*People v. Brown* (1994) 8 Cal.4th 746, 749-750, italics omitted.) The court explained that "evidence of a victim's conduct following the alleged commission of a crime, including the circumstances under which he or she did (or did not) promptly report the crime, frequently will help place the incident in context, and may assist the jury in arriving at a more reliable determination as to whether the offense occurred." (*Id.* at p. 760.) Thus, under the fresh complaint doctrine,[6] the making of the complaint and the circumstances surrounding its making are generally admissible while the details of the complaint, if offered to prove the truth of the matter asserted, are inadmissible. (*Ibid.*)

We find that Desiree's text message to Emily and spoken statement to Nora were properly admitted under the fresh complaint doctrine. Desiree testified that defendant sexually abused her on multiple occasions while she lived with him for nearly half a year. During this period, she cut herself and did not report the incidents because she feared that she would be doubted and separated from her younger brother, who was also living with defendant at the time. In March 2011, approximately eight months after she and her brother were removed from defendant's care and six months after she moved into Nora's home, Desiree revealed to Emily and Nora, two individuals in whom she placed her trust,

---

[6] Although the traditional doctrine required victims of sexual assault to "alert the community immediately following the commission of the crime" on the premise that "it is natural for the victim of a sexual assault to complain promptly following the assault," the Supreme Court abrogated this element in recognition of "[t]he overwhelming body of current empirical studies, data, and other information establish[ing] that it is *not* inherently 'natural' for the victim to confide in someone or to disclose, immediately following commission of the offense, that he or she was sexually assaulted." (*People v. Brown*, *supra*, 8 Cal.4th at pp. 754, 758, 763, original italics.) Child victims, in particular, may be reluctant to report because they are unaware of the wrongful and abnormal nature of the conduct, are intimidated by the abuser, and/or experience "feelings of confusion and guilt, the desire to forget the incident, and the fear of not being believed …." (*Id.* at p. 758.)

that she was raped by defendant.  The circumstances under which Desiree made her complaints were relevant to the jury's determination as to whether the alleged abuse occurred because they illuminated the reasons for the delayed disclosure and obviated the risk that the jury, in the absence of such context, would make inferences based on an incomplete or inaccurate understanding of her behavior.

Defendant counters that Desiree's statements were offered solely for the truth of the matter asserted and cited *People v. Loy* (2011) 52 Cal.4th 46.  In *Loy*, a prosecution witness testified that the deceased victim mentioned in a telephone conversation that she was afraid of the accused because he would "'make weird looks at her and sneak up to her room and touch her … chest and … grab her crotch.'" (*Id.* at p. 54.)  Finding that this statement could not be admitted under the fresh complaint doctrine, the Supreme Court pointed out that the judge instructed the jury that the statement was introduced "'*for the purpose of showing* [*a*] *lewd or lascivious act* between the [accused] and the alleged victim on another occasion other than that charged in the case.'" (*Id.* at p. 65, fn. 2, original italics.)  By contrast, Desiree's statements were offered for a limited, nonhearsay purpose:  to provide context for her delayed disclosure, the absence of which may have undermined her credibility in the eyes of the jury.

II.     Defendant failed to object to the trial court's limiting instruction for Desiree's statement to Nora and therefore forfeited the argument on appeal.

Extrajudicial statements admitted under the fresh complaint doctrine "should assist in enlightening the jury without improperly prejudicing the defendant" as long as they are "carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose …." (*People v. Brown*, *supra*, 8 Cal.4th at p. 762.)  Hence, the trial court, upon request, must instruct the jury as to the limited scope for which the statements are admitted.  (*Id.* at p. 757; see also Evid. Code, § 355.)  In the absence of a request, the court has no sua

9.

sponte duty to give such an instruction. (*People v. Manning* (2008) 165 Cal.App.4th 870, 880.)

Defense counsel asked the trial court to provide a limiting instruction for Desiree's statement to Nora. In response, the court advised the jury that "there are times when hearsay evidence can come in, as long as it's not offered for the proof of the matter asserted" and "this is a limited use of what she may say, you understand." This instruction did not clearly delineate the extent of the statement's limitation in reference to the fresh complaint doctrine. (See *Adkins v. Brett* (1920) 184 Cal. 252, 260.) Counsel, however, did not object to the error. If the accused does not request an additional instruction or clarification, he or she forfeits the right to complain of any such omission for the first time on appeal. (See *People v. Partin* (1967) 254 Cal.App.2d 89, 98, citing *People v. Robinson* (1960) 180 Cal.App.2d 745, 752.)

Failure to object to instructional error does not result in forfeiture if the error affected the defendant's substantial rights. (Pen. Code, § 1259; *People v. Lawrence* (2009) 177 Cal.App.4th 547, 553-554, fn. 11.) Substantial rights are affected if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; accord *People v. Arredondo* (1975) 52 Cal.App.3d 973, 978.) In this case, the likelihood that defendant would have obtained a different verdict, but for the inadequate limiting instruction, was not reasonably probable. Because Desiree herself testified at trial, the jury was able to directly assess her credibility and did not exclusively rely on her extrajudicial statement. (See *People v. Manning*, *supra*, 165 Cal.App.4th at pp. 880-881.) Moreover, defendant, in the course of the pretext call, admitted that he engaged in sexual conduct with Desiree, expressed remorse for his actions, and tried to convince her not to report him. Since the instructional error would have been harmless, defendant's substantial rights were not affected.

Defendant contends the trial court's insufficient limiting instruction deprived him of due process and, under the reversible error test set forth in *Chapman v. California* (1967) 386 U.S. 18, 24, could not be shown to be harmless beyond a reasonable doubt. We disagree. The *Chapman* test would apply if an "'ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72.) Here, while the court's limiting instruction did not adequately explain the limited, nonhearsay purpose of Desiree's statement to Nora, it did not constitute a violation of fundamental fairness. (*Id.* at p. 73; cf. *People v. Johnson* (2004) 119 Cal.App.4th 976, 985-986 [instructional error compels reversal per se where the trial court lowered the prosecution's burden of proof below the due process requirement of proof beyond a reasonable doubt].)

III. <u>Defendant's claim of ineffective assistance of counsel must be rejected because the appellate record did not demonstrate that counsel acted unreasonably</u>.

To establish ineffective assistance of counsel, the defendant must show that (1) counsel's performance did not satisfy an objective standard of reasonableness under prevailing professional norms, and (2) absent counsel's deficient performance, it is reasonably probable that the verdict would have been more favorable. (See *People v. Oden* (1987) 193 Cal.App.3d 1675, 1681, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Fosselman* (1983) 33 Cal.3d 572, 584.) If the appellate record does not specify why counsel acted or failed to act in the challenged manner, unless counsel was asked for and failed to provide a satisfactory explanation or "there simply can be no satisfactory explanation," we must reject the claim.[7] (*People v. Scott*

---

[7] For this reason, ineffective assistance of counsel claims are more appropriately made in a habeas corpus proceeding in which the trial attorney is afforded the opportunity to explain the reasons for his or her conduct and the court is in a better position to evaluate whether the conduct was within the range of reasonable competence. (*People v. Silvey* (1997) 58 Cal.App.4th 1320, 1329.)

(1997) 15 Cal.4th 1188, 1212; accord *People v. Garvin* (2003) 110 Cal.App.4th 484, 489-490.)

Based on the record before us, we cannot find that defense counsel acted unreasonably when he did not request a limiting instruction for Desiree's text message to Emily and did not object to the instruction given for Desiree's statement to Nora. He was not asked to explain these omissions and, in view of the presumption that counsel's conduct """""falls within the wide range of reasonable professional assistance""""" (*People v. Garvin*, *supra*, 110 Cal.App.4th at p. 489, citing *People v. Jones* (2003) 29 Cal.4th 1229, 1254), counsel may have plausibly concluded that the benefit afforded by a particular instruction would not offset the detriment of requesting or clarifying it.[8] (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1053; see also *People v. Huggins* (2006) 38 Cal.4th 175, 206 [failure to object rarely constitutes constitutionally ineffective legal representation].)

## DISPOSITION

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
POOCHIGIAN, J.

_____

[8] Assuming arguendo that defendant established that counsel did not act reasonably under prevailing professional norms, we would still reject the claim. In view of defendant's incriminating remarks during the pretext call, the likelihood that he would have obtained a different verdict in the absence of counsel's deficient performance was not reasonably probable.

12.